**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**DAWN PARRA,**

        **Plaintiff,**

**-vs-**                                              **Case No. 6:05-cv-911-Orl-31DAB**

**COMMISSIONER OF SOCIAL**
**SECURITY,**

        **Defendant.**

_____

**MEMORANDUM OPINION & ORDER**

The Plaintiff brings this action pursuant to the Social Security Act (the Act), as amended, Title 42 United States Code Section 405(g), to obtain judicial review of a final decision of the Commissioner of the Social Security Administration (the Commissioner) denying her claim for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) benefits under the Act.

The record has been reviewed, including a transcript of the proceedings before the Administrative Law Judge (ALJ), the exhibits filed and the administrative record, and the pleadings and memoranda submitted by the parties in this case. Oral argument has not been requested.

For the reasons that follow, the decision of the Commissioner is **affirmed.**

### *I. BACKGROUND*

**A.**      **Procedural History**

Plaintiff filed for a SSI benefits on December 29, 2000. R. 46-48. She alleged an onset of disability on December 15, 1980[1], due to black outs, convulsions, seizures, and headaches. R. 13, 77,

---

[1] This date apparently refers to the onset of serious symptoms related to Plaintiff's seizures, rather than the date permanent disability began. Plaintiff worked at various times since 1980, with varying levels of reported income. R. 53.

86. Her application was denied initially and upon reconsideration. R. 23-25. Plaintiff requested a hearing, which was held on May 12, 2004, before Administrative Law Judge Theodore S. Haynes (hereinafter referred to as "ALJ"). R. 348-71. In a decision dated December 14, 2004, the ALJ found Plaintiff not disabled as defined under the Act through the date of his decision. R. 10-20. Plaintiff timely filed a Request for Review of the ALJ's decision. R. 8-9. The Appeals Council denied Plaintiff's request on April 27, 2005. R. 5-7. Plaintiff filed this action for judicial review on June 17, 2005. Doc. No. 1.

### B.     Medical History and Findings Summary

Plaintiff, born October 18, 1962, has a high school education and additional training in cosmetology, business management, and as a legal secretary. R. 351-52. Plaintiff's past relevant work included employment as secretary, retail sales clerk, cashier, office clerk, cosmetologist, legal secretary, and executive secretary. R. 14, 87-92, 102. Plaintiff's medical history is set forth in detail in the ALJ's decision. By way of summary, Plaintiff complained of black outs, convulsions, seizures, and headaches. R. 13, 77, 86. After reviewing Plaintiff's medical records and Plaintiff's testimony, the ALJ found that Plaintiff suffered from a seizure disorder and neck pain, which were "severe" medically determinable impairments, but not severe enough to meet or medically equal one of the impairments listed in Appendix 1, Subpart P, Regulations No. 4. R. 20, Finding 3. The ALJ determined that Plaintiff retained the residual functional capacity (RFC) to perform sedentary to light work with additional non-exertional limitations consisting of no exposure to unprotected heights and moving machinery. R. 20, Finding 5. In making this determination, the ALJ found that Plaintiff's allegations regarding her limitations were not totally credible for the reasons set forth in the body of

the decision.[2]  R. 20, Finding 4.  Based upon Plaintiff's RFC, the ALJ determined that she could perform past relevant work.  R. 20, Finding 7.  Accordingly, the ALJ determined that Plaintiff was not under a disability, as defined in the Act, at any time through the date of the decision.  R. 20, Finding 8.

Plaintiff contends that the ALJ erred by finding she had the RFC to perform her past relevant work, by asking an inaccurate hypothetical, and by improperly assessing her credibility.  For the reasons that follow, the decision of the Commissioner is **AFFIRMED**.

## *II.  STANDARD OF REVIEW*

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971).  The Commissioner's findings of fact are conclusive if supported by substantial evidence.  42 U.S.C. § 405(g).  Substantial evidence is more than a scintilla – *i.e.,* the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.  *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson*, 402 U.S. at 401).

"If the Commissioner's decision is supported by substantial evidence, this Court must affirm, even if the proof preponderates against it." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n. 8 (11th Cir. 2004).  "We may not decide facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner.]" *Id.* (internal quotation and citation omitted); *Dyer v. Barnhart*, 395 F.3d 1206,

---

[2] Within the body of the decision, the ALJ discredited Plaintiff's reported limitations based on several specific inconsistencies between those limits, medical findings and Plaintiff's stated daily activities.  R. 18-19.

1210 (11th Cir. 2005). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord, Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

The ALJ must follow five steps in evaluating a claim of disability. *See* 20 C.F.R. §§ 404.1520, 416.920. First, if a claimant is working at a substantial gainful activity, she is not disabled. 29 C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled. 20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled. 20 C.F.R. § 404.1520(d). Fourth, if a claimant's impairments do not prevent her from doing past relevant work, she is not disabled. 20 C.F.R. § 404.1520(e). Fifth, if a claimant's impairments (considering her residual functional capacity, age, education, and past work) prevent her from doing other work that exists in the national economy, then she is disabled. 20 C.F.R. § 404.1520(f).

*Past relevant work and hypothetical question*

Plaintiff contends that the ALJ erred in using the VE's testimony to find that Plaintiff could return to her past relevant work. At step four of the five-step sequential evaluation process, the ALJ must determine whether or not the claimant is able to perform his past relevant work. "Past relevant work" is work experience that was done within the last fifteen years, lasted long enough for the claimant to learn to do it, and was substantial gainful activity. 20 C.F.R. § 404.1565(a). The ALJ

must compare Plaintiff's past job requirements with his ability to perform those duties in view of his impairments. *Schnorr v. Bowen*, 816 F.2d 578 (11th Cir. 1987).

Plaintiff contends that the ALJ erred in utilizing the testimony of the VE to find that Plaintiff could perform his past relevant work because, according to Plaintiff, a vocational expert should not enter the sequential analysis for determining disability until after a claimant is found unable to do past relevant work. The Commissioner responds Plaintiff erroneously relies on precedent which only applies in the Fourth Circuit and disingenuously argues[3] that such precedent is applicable in the Eleventh Circuit, which it is not.

At step four of the five-step sequential evaluation process, the ALJ must determine whether or not the claimant is able to perform his past relevant work. "Past relevant work" is work experience that was done within the last fifteen years, lasted long enough for the claimant to learn to do it, and was substantial gainful activity. 20 C.F.R. § 404.1565(a). The ALJ is required to make a detailed description of the past job's required duties and a comparison of Plaintiff's RFC to her particular past employment. *Schnorr v. Bowen*, 816 F.2d 178 (11th Cir. 1987).

The Vocational Expert ("VE") testified at the hearing that Plaintiff's past relevant work would be characterized as sedentary and light work as executive secretary, salesclerk, cashier, legal secretary, general office clerk, and cosmetologist. R. 368-69. The ALJ asked the VE:

> Assume that I have an individual between the ages of 39 and 41 with a high school education. Assume that the restrictions that they have are non-exertional and that the person has a seizure disorder. Assume that this person has seizure on the order of – while on medication, let's assume that I find that the claimant has seizures, one seizure every three to four months. Assume that, that if they – of those seizures that, according to the record, most of them will be at night. Assume that that person had

---

[3] To compound matters, this is the second case in front of the same judge in which Mr. Gautier has argued the same clearly erroneous theory. *See* 6:05cv403-DAB, *Burton v. Barnhart.*

-5-

>    to stay away from moving machinery, had to stay away from dangerous equipment, that sharp or dangerous equipment and stay away from heights. And would not have to operate any type of driving machinery. First of all, could that person do the previous work as either a cashier or as a secretary?

R. 369-70. The VE testified that the hypothetical individual could perform the previous work as a secretary and cashier. R. 370.

Plaintiff contends that the ALJ erred in utilizing the testimony of the VE at Step Four to find that Plaintiff could perform his past relevant work because a VE should not enter the sequential analysis for determining disability until after a claimant is found unable to do past relevant work. Plaintiff relies on the Fourth Circuit case of *Smith v. Bowen*, 837 F.2d 635, 636 (4th Cir. 1987) and states in a footnote that, although the Commissioner disagreed with the *Smith* decision in Acquiescence Ruling (AR) 90-3(4)), the Commissioner has since rescinded the AR, effective September 25, 2003 (*See* 68 Fed. Reg. 51317-02), implying that the *Smith* decision is now applicable in all circuits.

Plaintiff's position ignores case law from the Eleventh Circuit, which contradicts the *Smith* case, and Plaintiff misstates the status of the current legal standards governing the use of VE testimony at step four of the sequential evaluation process. Following the decision in *Smith v. Bowen*, 837 F.2d 635 (4th Cir. 1987) – in which the Fourth Circuit proscribed the use of VE testimony to determine whether a claimant's RFC would preclude performance of past relevant work – the Commissioner disagreed with the holding and issued Acquiescence Ruling (AR) 90-3(4), limiting its application to cases prosecuted in the Fourth Circuit. There is not a proscription on using VE testimony at step four of the sequential analysis in the Eleventh Circuit; in the Eleventh Circuit, the reliance on VE testimony at step four of the sequential analysis is widely accepted. *See, e.g., Wilson v. Barnhart*, 284 F.3d 1219, 1222 (11th Cir. 2002); *Hennes v. Commissioner of Social Security*, 130

Fed. Appx. 343, 346 & n. 2 (11th Cir. 2005) (under SSA's regulations, ALJ may use a VE in making the determination of whether claimant can perform past relevant work, and rejecting plaintiff's citation to non-binding contrary authority in *Smith v. Bowen*).

In *Bechtold v. Massanari*, the court held: "Although the assistance of vocational experts is usually sought by administrative law judges at step five of the sequential evaluation of disability, in every circuit save one it is not error for an administrative law judge to use the services of a vocational expert at step four of the analysis to determine whether a claimant can return to her past relevant work." 152 F. Supp.2d 1340, 1345, n.4 (M.D. Fla. 2001) (citing AR 90-3(4)). The Commissioner explained in her rescission notice that AR 90-3(4) has been rendered obsolete by the publication of final rules amending 20 C.F.R. §§ 404.1560(b) and 416.960(b) to clarify that the services of a VE, vocational specialist, or other vocational resources may be used at step four of the sequential evaluation process. *See* 68 Fed. Reg. 51,317 (Aug. 26, 2003); SSR 00-4p (attached as Doc. No. 17-3).

Plaintiff also contends that the ALJ's hypothetical was erroneous because it reflected that her seizures occurred once every three or four months, rather than the three to four times a week to which Plaintiff testified. The ALJ must employ hypothetical questions which are accurate and supportable on the record and which include all limitations or restrictions of the particular claimant. *Pendley v. Heckler*, 767 F.2d 1561 (11th Cir. 1985). Where the hypothetical employed with the vocational expert does not fully assume all of a claimant's limitations, the decision of the ALJ, based significantly on the expert testimony, is unsupported by substantial evidence. *Id.* at 1561 (quoting *Brenem v. Harris*, 621 F.2d 688, 690 (5th Cir. 1980)).

The ALJ found Plaintiff's testimony regarding the frequency of her seizures not to be credible. The Commissioner contends that the ALJ correctly supported his rationale with the medical and other

evidence. Where an ALJ decides not to credit a claimant's testimony about pain or the extent of limitations, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding. *Jones v. Department of Health and Human Services*, 941 F.2d 1529, 1532 (11th Cir. 1991) (articulated reasons must be based on substantial evidence). A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record. As a matter of law, the failure to articulate the reasons for discrediting subjective pain testimony requires that the testimony be accepted as true. *Foote*, 67 F.3d at 1561-62; *Cannon v. Bowen*, 858 F.2d 1541, 1545 (11th Cir. 1988).

Plaintiff points to Dr. Farber's January 13, 2003 notes that she reported experiencing seizures approximately once every two weeks and more frequently in association with her menstrual cycle. R. 309. Two weeks later, on January 27, 2003, Plaintiff also reported having had a seizure during her sleep. R. 308. In March 2003, Plaintiff reported still having seizures. R. 301. The Commissioner does not dispute that Plaintiff reported that her seizure activity increased in 2003 to greater than three or four times a month; however, as noted by the ALJ, prior to 2003, Plaintiff's seizure activity was once every three to four months. On January 20, 2004, Plaintiff reported to Dr. Farber not having any recurrent seizures and that she was doing well. R. 269.

Plaintiff points to her report to Osceola Regional Medical Center one month later, on February 18, 2004, that she had had four seizures during the previous month. R. 247. Concerning Plaintiff's seizure activity, the ALJ found:

> The claimant has a long history of a seizure disorder since the age of 17. She was taking prescribed medication, which have controlled her seizures. On August 13, 2003 she reported that she was doing well on her medication and did not start to have seizures again until about five years prior (2000). She stated that most of her seizures occur at night when sleeping. However she reported to Dr. Farber that she experiences seizures where she suddenly falls to the ground and bites her tongue.

-8-

> The claimant takes her medications as prescribed. However, records also indicate that she has overdosed (in an apparent suicide attempt) on two occasions. These occurred when she was having family, relationship problems. EEG's and CT scans were all within normal limits. Dr. Austin opined in Exhibit 5F that the claimant had a high potential to have seizures when she did not take her medications. She continued to have sporadic seizures and on November 13, 2000 she had a seizure with no complications.

R. 18. The ALJ's finding that Plaintiff's seizures were sporadic and controlled by medication was supported by substantial evidence.

Dr. Link, Plaintiff's treating physician fully aware of her seizure activity, opined on April 10, 2003, that Plaintiff could work full-time with restrictions, and would only miss work occasionally because of her condition. R. 196-203, 226-33, 289. It is clear from the records that Plaintiff had seizures much more frequently when she either did not take her medication or because she was using the generic version of it, which Dr. Farber specifically warned her against several times. Despite Plaintiff's hearing testimony that she takes her medication as prescribed (R. 367), the notes from visits to the Emergency Room during 2001 and 2002 at Osceola Regional Medical Center, reflect that Plaintiff was either not taking the non-generic Dilatin or was taking too little of it. *See* R. 261 (six to seven brief episodes; bought generic version of Dilantin last time); 265 (seizure; subtherapeutic Dilantin levels). In August 2001, around the time when Plaintiff was experiencing seizures, she admitted to Dr. Link that she had stopped taking the prescribed Phenobarbital after a month, and he was highly skeptical that her prior physician had only prescribed it for one month. R. 238 (Plaintiff "is a very poor historian and it is difficult to get straight answers from her.").

Dr. Farber warned Plaintiff repeatedly of the importance of taking non-generic medications after she told him about her bad reaction to generic preparations of her anticonvulsant agents while in the county jail for a month to serve time for beating up a police officer in Florida. R. 269. In

January 2003, Plaintiff told Dr. Farber that she was taking generic versions of the medications he prescribed and, on two occasions, he "stressed to her the importance of not taking any generic preparations." F. 308, 309. At that time, Dr. Farber prescribed blood evaluations to test her medications levels, but Plaintiff never had them performed because she "could not get a ride." R. 301. By the next appointment three weeks later, on April 14, 2003, Dr. Farber noted that Plaintiff conceded that (on her own) she had "discontinued" her Dilantin and Tegretol because she was complaining of excessive weight gain; Dr. Farber advised her to get back on those medications. R. 300. This scenario casts doubt on Plaintiff's other statements to Dr. Farber that "despite taking these medications, she indicates that she continues to experience seizures." R. 301.

Moreover, on July 24, 2004, Plaintiff went to the Emergency Room with a seizure, again the result of running out of her medication "several days ago." R. 319. Her Dilantin level was below therapeutic levels at that time. R. 320. As the ALJ appropriately pointed out, Dr. Austin recognized and Plaintiff herself admitted that she had a "high potential for seizures when she does not take her medications." R. 18 (citing R. 185); 62 ("When I get sick it's because I have no medication"). One of the reviewing state physicians also recognized that Plaintiff's seizures were well-controlled except when she was non-compliant with her medications. R. 201; *see also* R. 181 (January 27, 1997 - "had seizure activities in last week, ran out of her medications; did not come for follow up since her initial visit, when questioned she had no answer"); R. 172 (September 30, 1992 - two seizures "off Phenobarbital times one week and takes only Depakote").

Plaintiff points to the results of her June 13, 2003 "borderline positive" tilt-table test. R. 274-75. However, as Dr. Zullow who performed the test noted, Plaintiff at that time had not had a seizure in three months; Plaintiff was keeping herself well hydrated because she had been found to be

dehydrated during the borderline positive test. R. 273. "At this point, without further symptomatology, she should continue to maintain her hydration level." R. 273. By June 5, 2003, Plaintiff reported after the addition of certain medications, her drop attacks had "improved significantly." R. 277.

Although Plaintiff saw two examining physicians two days apart, Plaintiff inconsistently informed them that she was having seizures once a week and three times per week. During the consultative examination of July 12, 2004, Plaintiff informed Dr. Ysern that she was having seizures at least once a week. R. 334-37. The following day, on July 13, 2004, Plaintiff was seen by Dr. Estampador-Tan in a consultative examination, and Plaintiff reported having seizures three times per week. R. 342. Dr. Estampador-Tan residual functional capacity evaluation reported that, due to the unpredictability of her seizure episodes, Plaintiff's limitations would be safety-related, postural and environmental, such as avoiding moving machinery and unprotected heights, consistent with the ALJ's residual functional capacity finding. R. 342-47. The ALJ's determination that Plaintiff's seizure were once every three to four months was based on substantial evidence; the higher frequency of seizures occurred when Plaintiff was non-complaint with her medications.

*Credibility finding*

Plaintiff asserts that the ALJ erred in evaluating her credibility and discounting it because she was looking for work and was able to travel around to several other states. R. 19. Although the ALJ did not refer to the Eleventh Circuit's credibility evaluation standard (often referred to as the "pain standard") as such, he clearly was aware of the governing standards for evaluating subjective complaints because he cited the applicable regulations and Social Security Ruling ("SSR") 96-7p. R. 18. *See Wilson v. Barnhart*, 284 F.3d 1219, 1225-26 (11th Cir. 2002) (per curiam) (ALJ properly

-11-

applied the Eleventh Circuit pain standard even though he did not "cite or refer to the language of the three-part test" as "his findings and discussion indicate that the standard was applied"). Moreover, the ALJ complied with those standards. He obviously determined that plaintiff had an objective medical condition that could give rise to the alleged symptoms, because otherwise the ALJ would not be required to assess the credibility of the alleged complaints.

Having concluded that he had to make a credibility determination of Plaintiff's subjective complaints, the ALJ plainly recognized that he had to articulate a reasonable basis for his determination. The ALJ also found Plaintiff's testimony regarding her limitations due to the seizures were not credible as follows:

> The claimant indicated that she was unable to work due to her seizures, however records indicated that she continued to look for a job. Records dated February 19, 2004 indicated that she was filling out an application for a job when she felt lightheaded. Despite the fact that the claimant suffered from seizures since the age of 17 she had been able to work, travel, attend beauty school, and attend to most of activities of daily living without any problems. She reported that she had no chores or responsibilities because her parents preferred for her to be dependent on them. She enjoyed traveling from place to place and had traveled frequently with her kids to Puerto Rico, New York, Maryland, Delaware, Virginia, and Florida. She reported that she was trying to find some independence and anticipated moving to a place of her own as soon as possible so she could become financially stable again.
>
> The claimant had no exertional limitations and Dr. Estampador indicated that due to her seizures she should avoid exposure to unprotected heights and moving machinery. This is consistent with the state agency opinions in Exhibit 6F and 11F. The undersigned agrees with these limitations and therefore gives these opinions great weight as they are well supported by the bulk of the medical evidence of record as a whole.
>
> Accordingly, in light of the above analysis the claimant' subjective allegation of pain and functional limitations of fully disabling severity are not considered fully credible.

R. 18-19.

Plaintiff points to notes indicating that, while she was filling out the job application in question, she had one of her episodes of lightheadedness which demonstrates that her episodes come without warning and because of her seizures, she would not be able to maintain employment on a regular basis. Plaintiff also contends, without support in the record, that the trips out of state were not for recreation or vacation, but rather because she "needed assistance from family members," citing R. 184-85 (February 26, 1997). Other records show that her parents supported her during the relevant time period. R. 47 (Raymond Parra pays rent on home), 79 (parents take shopping), 83 (same).

Plaintiff also was not credible regarding her legal history, which is a reflection of her lack of credibility. At the consultative examination by Dr. Ysern on July 12, 2004, Plaintiff "denied any legal involvement, yet medical records provided indicate a prior one-month county jail sentence served for assaulting a police officer." R. 334. The medical records indicate that Plaintiff had told Dr. Farber on January 20, 2004 she "was placed in the county jail for a period of one month to serve time for beating up a police officer in Florida." R. 269.

Here, the ALJ offered specific reasons for discrediting Plaintiff's subjective complaints. The ALJ's reasons included inconsistencies between her reports to treating and consultative physicians, as well as inconsistencies between her statements and her activities of daily living. These are factors the ALJ is directed to consider. 20 C.F.R. §§ 404.1529; 416.929. The Court finds that the ALJ's reasons are supported by substantial evidence.

## *CONCLUSION*

The record in this case shows that Plaintiff does suffer from seizures, but that her situation is exacerbated by her failure to take her medication as prescribed. Further, there is substantial evidence to support the ALJ's finding that Plaintiff exaggerated the extent of her difficulties. The ALJ

appropriately considered these circumstances and analyzed them in relation to the exacting disability standard under the Social Security Act.  For the reasons set forth above, the ALJ's decision is consistent with the requirements of law and is supported by substantial evidence.  Accordingly, the Court **AFFIRMS** the Commissioner's decision pursuant to sentence four of 42 U.S.C. § 405(g).  The Clerk of the Court is directed to enter judgment consistent with this opinion and, thereafter, to close the file.

      **DONE** and **ORDERED** in Orlando, Florida on August 15, 2006.

                                     *David A. Baker*

                                    DAVID A. BAKER
                        UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record